Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3358 | **DATE** | 2/3/2004 |
| **CASE TITLE** | RM Petroleum, Inc. vs. LA Oasis, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion to Dismiss Plaintiffs' Amended Complaint

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Before the court is Defendants' Motion to Dismiss Plaintiffs' Amended Complaint [20-1]. For the reasons stated on the attached Opinion and Order, Defendants' motion [20-1] is DENIED. (See attached.) Additionally, the Clerk's docket shows Plaintiffs' Motion for a Preliminary Injunction [3-1] as pending. Given the passage of time and the efforts by the parties to resolve the issues raised in the motion, the court regards the motion as moot. Thus, Plaintiffs' motion [3-1] is DENIED as moot. If either party is not in agreement, it shall file an appropriate motion within 14 days. It is so ordered.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | FEB 05 2004 date docketed | |
| ✓ | Docketing to mail notices. | | 28 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RM PETROLEUM, INC. and ROBERT STAMBOLIC, | ) ) ) | |
| Plaintiffs, | ) ) | No. 03 C 3358 |
| v. | ) ) | Honorable Charles R. Norgle |
| LA OASIS, INC., HARRY RANDHAWA, | ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the court is Defendants' Motion to Dismiss Plaintiffs' Amended Complaint brought pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3).[1] For the following reasons, Defendants' motion is denied.

## I. BACKGROUND

Defendant LA Oasis, Inc. ("LA Oasis") is an Indiana corporation which owns and operates a retail petroleum station located at 9247 Taft Street, Merriville, Indiana ("Taft Station"). Defendant Harry Randhawa is an officer and shareholder of LA Oasis.

In December of 1997, LA Oasis and Randhawa (hereinafter collectively referred to a "Defendants") entered into several agreements with the Shell Oil Company ("Shell"). Specifically, on December 1, 1997, Randhawa entered into an agreement guarantying prompt and full payment

---

[1] In the alternative, Defendants move for the court to transfer this action to the Northern District of Indiana. At this time, the court does not consider Defendants' Motion to Transfer Venue because no party has addressed the issues in light of the factors contemplated in 28 U.S.C. § 1404(a). See Coffey v. Van Dorn Iron Works, 796 F.2d 217, 220 (7th Cir. 1986).

1

of all indebtedness incurred by LA Oasis to Shell ("General Guaranty"). On December 2, 1997, LA Oasis entered into a Dealer Agreement relating to the Taft Station with Shell. The Dealer Agreement required, among other things, that LA Oasis purchase certain quantities of gasoline from Shell each month, and sell Shell-branded motor fuels and lubricants under Shell's trademarks, brand names, service marks and color schemes. Defendants also entered into a Promissory Note ("Note") on December 2, 1987, in which Shell agreed to pay Defendants $350,000 for the purpose of financing improvements at the Taft Station pursuant to the Dealer Agreement. Additionally, on the same date, Randhawa signed agreements in which he personally guaranteed the Note ("Note Guaranty") and in which LA Oasis gave Shell a security interest in certain assets to secure payment on all existing and future indebtedness, liabilities and obligations ("Security Agreement").

Upon execution of the Dealer Agreement, Note, Note Guaranty, Security Agreement, and General Guaranty (hereinafter collectively referred to as "Dealer Instruments"), Defendants commenced a commercial relationship with Shell lasting about three years. Under the terms of the Dealer Agreement, Defendants operated the Taft Station until May 12, 2003, the date on which the Dealer Agreement expired.

On September 1, 2002, Shell entered into a Wholesale Marketer Agreement ("Wholesale Agreement") with Plaintiff RM Petroleum ("RMP"). RMP is an Illinois Corporation with its principal place of business in Chicago, Illinois. Under the terms of the Wholesale Agreement, RMP was authorized, as a non-exclusive wholesaler, to sell Shell products in Lake County, Indiana. On October 10, 2002, Shell, through its successor Equilon, assigned to RMP all of Shell's retail operations in Lake County, Indiana, including the contractual rights and obligations pursuant to the Dealer Instruments. Pursuant to the assignment, RMP took the place of Shell in supplying Shell-

2

branded products to Defendants at the Taft Station pursuant to the Dealer Instruments. Numerous purchases and sales were transacted.

In December 2002, Randhawa made at least three telephone calls to the Illinois home of Plaintiff Robert Stambolic, the President of RMP. Plaintiffs allege that these calls conveyed threatening messages, including threats that he intended to murder Stambolic and his family. Plaintiffs further allege that these threats were an attempt to coerce Stambolic into a particular course of action regarding the Dealer Instruments.

After May 12, 2003, Defendants treated the Dealer Agreement as terminated. Defendants also allegedly continued to sell Shell-branded products and commingle Shell-branded gasoline with unbranded gasoline despite the presence of Shell-branded trademarks, colors and other Shell identifications on or about the Taft Station.

On May 20, 2003, Plaintiffs filed the present lawsuit. On September 9, 2003, Plaintiffs filed a First Amended Complaint alleging that Defendants breached the various Dealer Agreements, violated the Lanham Act, 15 U.S.C. §§ 1051-1127, and that Defendant Randhawa committed the tort of assault against Stambolic. On October 2, 2003, Defendants filed their Motion to Dismiss Plaintiffs' First Amended Complaint, which asserts that the court lacks personal jurisdiction over both Defendants and that venue is improper. On January 24, 2004, after granting Plaintiffs' Motion to Set Ruling on Defendants' Motion to Dismiss, the court heard oral argument on Defendants' Motion to Dismiss. Defendants' Motion to Dismiss is now ready for ruling.

## II. STANDARD OF REVIEW

Once a defendant has challenged a court's exercise of personal jurisdiction, the plaintiff has the burden of demonstrating that the court's exercise of personal jurisdiction over a defendant is

proper. See RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1995). "In deciding a motion to dismiss for lack of personal jurisdiction, the court may receive and consider affidavits from both parties." Glass v. Kemper Corp., 930 F. Supp. 332, 337 (N.D. Ill. 1996) (citing Turnock v. Cope, 816 F.2d 332, 333 (7th Cir. 1987)). "The court resolves factual disputes in the pleadings and affidavits in favor of the plaintiff, but takes as true facts contained in the defendant's affidavit that remain unrefuted by the plaintiff." Id. (citing Nelson v. Park Industries, Inc., 717 F.2d 1120, 1123 (7th Cir. 1983)).

## III. DISCUSSION

### A. Personal Jurisdiction

A federal district court "has personal jurisdiction over a non-resident defendant only if a court of the state in which it sits would have such jurisdiction." See Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 779 (7th Cir. 2003); see also RAR, Inc., 107 F.3d at 1275 (citing Klump v. Duffus, 71 F.3d 1368, 1371 (7th Cir. 1995)). In Illinois, a federal district court will have personal jurisdiction over a nonresident defendant only where: 1) Illinois statutory law properly grants jurisdiction; 2) the exercise of personal jurisdiction would not violate Illinois constitutional law due process requirements; and 3) the exercise of personal jurisdiction would not violate the United States constitutional law due process requirements. See Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 946 (7th Cir. 2000).

In this case, the three inquiries may be consolidated into one, analyzing whether the exercise of personal jurisdiction would violate the United States constitutional law due process requirements. See Hyatt International Corp. v. Coco, 302 F.3d 707, 714-16 (7th Cir. 2002) (concluding that the Illinois long-arm statute permits Illinois courts to exercise jurisdiction on any basis permitted by the

4

Illinois and United States Constitution); see also Klump, 71 F.3d at 1371 (indicating "if the contacts between the defendant and Illinois are sufficient to satisfy the requirements of due process, then the requirements of both the Illinois long-arm statute and the United States Constitution have been met, and no other inquiry is necessary").

## B. Constitutional Limits on Personal Jurisdiction

The Due Process Clause of the Fourteenth Amendment limits when a state may assert personal jurisdiction over nonresident individuals and corporations. RAR, 107 F.2d at 1277 (citing Pennoyer v. Neff, 95 U.S. 714, 733 (1878)). As elucidated by International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny, to satisfy the requirements of federal due process, a non-resident defendant must have established sufficient "minimum contacts" with the forum state such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. See generally RAR, 107 F.2d at 1277. To establish such "minimum contacts . . . [i]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). In determining whether sufficient "minimum contacts" exist, courts consider whether a defendant could "reasonably anticipate being haled into court" in that forum. See World-Wide Volkswagen Corp. v. Woodsen, 444 U.S. 286, 297 (1980). This requirement is satisfied when the defendant intentionally directs his activities at forum state residents and the litigation arises from injuries allegedly caused by those activities. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985).

The Supreme Court has divided the "minimum contacts" inquiry into two distinct categories, general jurisdiction and personal jurisdiction. See Hyatt International Corp., 302 F.3d at 713. A

5

court has general jurisdiction over a nonresident defendant only when the defendant has "'continuous and systematic general business contacts' with the forum." See Purdue Research Foundation, 338 F.3d 787 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984)). If the court finds that such contacts exist, it may exercise personal jurisdiction over the defendant even if the action does not arise out of or is not related to the defendant's contacts with the forum. See Hyatt International Corp., 302 F.3d at 713. Specific jurisdiction, on the other hand, "refers to jurisdiction over a defendant in a suit 'arising out of or related to the defendant's contacts with the forum.'" See RAR Inc., 107 F.3d at 1277 (quoting Helicopteros Nacionales de Colombia, 466 U.S. at 414 n.8).

### 1. *General Jurisdiction*

In this case, Plaintiffs do not allege that Defendants had any contacts with Illinois outside of those which give rise to the claims before the court. Plaintiffs' Complaint alleges that Defendants breached the various Dealer Instruments, including the Dealer Agreement authorizing Defendant's use of Shell's trademarks, colors and identifications. It further alleges that Defendants' continued use of these items after the alleged breach constitutes violations under the Lanham Act and that Randhawa's threatening statements relate to the Dealer Instruments. Plaintiffs identify only those contacts which arise out of or relate to Defendants' negotiation and execution of the Dealer Agreements and the obligations which arise thereunder. Thus, Plaintiffs fail to show that Defendants have such continuous and systematic general business contacts in Illinois which would subject them to the general jurisdiction of the Illinois courts. See Purdue Research Foundation, 338 F.3d at 788 (recognizing the high standard needed to establish general jurisdiction over a nonresident defendant). As such, the court only need to analyze whether Plaintiffs' Amended Complaint establishes that the

6

Illinois courts have specific jurisdiction over Defendants. See RAR Inc., 107 F.3d at 1277 (indicating that a party waives its general jurisdiction argument when it fails to allege "systematic contacts with Illinois" in its complaint).

### 2. *Specific Jurisdiction*

In specific jurisdiction cases, the court must decide whether a defendant has "purposefully established minimum contacts within the forum state" and consider whether those contacts would make personal jurisdiction reasonable and fair under the circumstances. See Burger King, 471 U.S. at 476-77. This requires a showing that the defendant could have anticipated being haled into the courts of the state as a result of its contacts with the forum. See id.; see also World-Wide Volkswagen, 444 U.S. at 297. "Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." Purdue Research Foundation, 338 F.3d at 787. To ensure that jurisdiction is not based on fortuitous contacts, there must be at least some showing that the defendant purposefully availed itself of the privilege of conducting activities within the forum state. Id.

In this case, Plaintiffs' First Amended Complaint alleges that Defendants had contacts with Illinois dating back at least to November 12, 1997. At this time, Defendants sought to enter into a franchise agreement with Shell, through its agency located in Oak Brook, Illinois ("Oak Brook Shell"). See Am. Compl., Ex. A (Nov. 12, 1997 letter). Thus, Defendants solicited the contract and negotiated its terms with a corporation in Illinois several weeks prior to the execution of the agreement. Also, although the Dealer Instruments appear to have been executed in Indiana, the Dealer Agreement itself expressly states that it is "an agreement . . . between [Oak Brook Shell] . .

7

. and La Oasis, Inc. . . ." Id. By executing all of the Dealer Instruments, Defendants knew they were contracting to do business with a company located in Illinois.

Although contracting with an out-of-state party alone cannot automatically establish sufficient minimum contacts in the other party's forum, the court must view "the contract in the context of the entire transaction of which it is a part." Burger King, 471 U.S. at 478-79. Under the Dealer Instruments, all purchase orders for gasoline were to be communicated to a company in Illinois. See Am. Compl., Ex. A. Similarly, all payments required under the Dealer Agreement were to be made to a company in Illinois. See id. This alone is enough to establish personal jurisdiction over Defendants. See Burger King, 471 U.S. 487 (holding that where a franchisee establishes a "substantial and continual relationship" with a franchisor located in another state, the franchisee subjects himself to personal jurisdiction within that state). Although Plaintiffs were not parties to the Dealer Instruments at this time, these contacts are nevertheless relevant to the analysis because in breach of contract cases, the focus is on Defendants' contacts with the forum which relate to the contract itself. See Purdue Research Foundation, 338 F.3d at 781. Because the Dealer Instruments are the contracts in dispute, Shell's later assignment of the rights under the agreements to RMP does not affect Defendants' previous contacts with Illinois. See id.

Additionally, after Equilon assigned the rights under the Dealer Instruments to RMP, Defendants had further contacts with Illinois. On January 13, 2003, Randhawa sent an e-mail to RMP acknowledging the existence and binding nature of the Dealer Instruments and offering to sell unbranded gasoline in return for the termination or modification the agreements. See Am. Compl. ¶ 19. Also, on April 16, 2003, LA Oasis received a shipment of gasoline from RMP. See Pls.' Resp., Ex. A. This shipment was from a refinery located in Argo, Illinois. See id. Payment for this

shipment was made to RMP in Illinois. Furthermore, Plaintiffs' Amended Complaint alleges that Randhawa made several telephone death threats to Stambolic's Illinois home in December 2002. Am. Comp. ¶ 26. Randhawa allegedly made these death threats in an attempt to coerce Plaintiffs into a particular course of business which related to the Dealer Instruments. Id. These threats alone could satisfy the minimum contacts necessary to satisfy specific jurisdiction over Randhawa in Illinois. However, because Plaintiffs allege that the subject of the telephone calls relates to the contracts in dispute, and because Randhawa is personally liable on at least some of those contracts, the court may consider all of Randhawa's contacts with Illinois in determining whether he is subject to personal jurisdiction in Illinois. See Burger King, 471 U.S. at 487.

Based on the foregoing circumstances, both Defendants could have anticipated being haled into an Illinois court as a result of their various contacts with Illinois relating to the Dealer Instruments. As a result, Plaintiffs choice of bringing this suit in Illinois is reasonable and fair under the circumstances. See id.

**C. Venue**

Plaintiffs assert federal court jurisdiction pursuant to both diversity of citizenship as well as federal question jurisdiction. See Am. Compl. ¶ 5. Hence, the applicable venue provision is 28 U.S.C. § 1391(b), which provides in part:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may . . . be brought in (1) a judicial district where any defendant resides, if all defendants reside in the same State, [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property is the subject of the action litigated . . . .

28 U.S.C. § 1391(b). Having determined that Defendants are subject to personal jurisdiction in Illinois, LA Oasis is regarded as residing in this district because under § 1391(c), a corporation is

9

deemed to reside in a district in which it is subject to personal jurisdiction. Randhawa, however, is not a corporation and resides in Indiana. Therefore, because both Defendants do not reside in Illinois, venue is not proper in this judicial district under § 1391(b)(1).

Turning to § 1391(b)(2), this section is the result of a 1990 amendment in which Congress chose to broaden the scope of the previous provision which usually resulted in venue being proper in only one judicial district. See First of Michigan Corp. v. Bramlet, 141 F.3d 260, 263 (6th Cir. 1998); see also David D. Siegel, Commentary on the 1988 and 1990 Revisions of Section 1391, Subdivisions (a), (b) and (e), 28 U.S.C.A. § 1391 (1993). Thus under the current version of § 1391(b)(2), venue can be proper in more than one judicial district. See Truserv Corp. v. Neff, 6 F. Supp. 2d 790, 792 (N.D. Ill. June 2, 1998). Section 1391(b)(2) provides that venue exists in a district if "a substantial part of the events or omissions giving rise to the claim occurred" there. 28 U.S.C. § 1391(b)(2). This does not mean, however, that the majority of the events in the instant case must have taken place in Illinois. See id.; see also Chemical Waste Management, Inc. v. Sims, 870 F. Supp. 870, 875 (N.D. Ill. Dec. 12, 1994). "The test is not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to the claim occurred in the particular district." Id.

In this case, Defendants contend that the claims against them are based on alleged acts and omissions that took place in Indiana, not Illinois. Defendants argue that because the only substantial events occurred, if at all, in Indiana, venue in Illinois is not proper. See Defs.' Mot. to Dismiss, at 8. However, Defendants' decision to focus solely on the events which occurred in Indiana, at a particular point-in-time, is misplaced. Given the unitary nature of the Dealer Instruments, the court must look at all of Defendants' actions under the contracts to determine proper venue. Although the

Dealer Instruments were executed in Indiana, they required that payment be made to Illinois. It is the failure to pay RMP in Illinois that forms the basis of RMP's breach of contract claims against Defendants. See Truserv Corp., 6 F. Supp. 2d at 792 (although contracts were executed in Pennsylvania, it is the defendant's failure to pay plaintiff in Illinois that constitutes the basis of its claims). This applies to both LA Oasis and Randhawa, who signed personally guarantying payment on both the Dealer Agreement and the Note. Similarly, under the Dealer Agreement, Defendants are required to take delivery of Shell branded gasoline from RMP in Illinois. Because Plaintiffs allege that Defendants failed to do this, this omission, which forms the basis of Plaintiffs' claims, occurred in Illinois. See id. Also, Plaintiffs allege that Defendants sent checks for payment of obligations under the Dealer Instruments knowing that there were insufficient funds available in the account. These checks were sent to Illinois. Therefore, this alleged breach also occurred in Illinois. Lastly, Plaintiffs allege that Randhawa made several threatening telephone calls to Stambolic at his home in Illinois. Although Randhawa was in Indiana when he made these calls, the alleged threat was conveyed to Stambolic in Illinois, for which he could expect to be haled into the courts of Illinois.

Based on the foregoing activities, a substantial portion of the activities and omissions giving rise to Plaintiffs' claims occurred in the Northern District of Illinois. See Truserv Corp., 6 F. Supp. 2d at 792. Therefore, venue is proper in the Northern District of Illinois.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint is denied.

IT IS SO ORDERED.

_____
Charles Ronald Norgle, Judge
United States District Court

DATED 2/3/04